UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARY LANDON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:12 CV 397 |
| | ) |
| AMERICAN SENIOR COMMUNITIES, | ) |
| LLC, AND EAGLECARE, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

I. **BACKGROUND** [1]

Plaintiff Mary Landon began working at a nursing home called Heritage Park in 2002 when she was 44 years old. (DE # 22-1 at 3-4, Landon Dep. 11, 15.) In 2006, she transferred to another nursing home, Bethlehem Woods, and was promoted to Director of Nursing. (*Id.* at 15, Landon Dep. 27.) There, she met her self-described life partner, Megan McKee, another Bethlehem Woods employee. (DE # 26 at 2; DE # 22-1 at 46, Landon Dep. 73.) While Landon worked at Heritage Park and Bethlehem Woods, she was an employee of defendant Eaglecare, LLC. (DE # 22-4.) Defendant American Senior Communities, LLC ("ASC"), managed both nursing homes. (*Id.*)

*Age-Related Comments in the Workplace*

Landon's supervisor at Bethlehem Woods was JoElyn Morris, who is of similar age to Landon. (DE # 22-1 at 3, Landon Dep. 11:21-22; DE #22-4 at 2.) Morris reported to Jim Karner, Regional Director of Operations. (DE # 22-5 at 2; DE # 22-4 at 2.) In her

---

[1] The following facts are undisputed unless otherwise described.

deposition, Landon described Morris as having a "volatile personality," and as someone who "yelled" and "chastised" employees. (DE #27-1 at 6-7, Landon Dep. 34-35.) Landon stated that the morning meeting, spearheaded by Morris, "could be a free-for-all. You never knew what topic would come up. They would last 45 minutes to two hours, depending on the mood she was in. . . . One day she called our person who did HR at the time and asked her how many times she'd been married in front of everyone. Constantly asking people what year they were born. 'What year did you graduate? Who's the oldest in the room? What's the latest diet fad?' Very personal, inappropriate . . . She would come in, she'd maybe start talking about your haircut and what somebody is wearing, 'stand up turn around,' just anything. There was nothing sacred." (*Id.* at 7-9, Landon Dep. 35-37.)

Landon asserts that Morris focused on the age of her employees to an inappropriate degree. Landon stated that Morris asked about her age and the year she graduated, and would ask "Do you know so-and-so?" (*Id.* at 10, Landon Dep. 38.) Landon further testified: "She was very focused on the young ones . . . at the table [during meetings]. You know she would talk about, 'Well, now, the young ones in here might not understand,'" and at times would make fun of the younger employees. (*Id.* at 9, Landon Dep. 37.) Morris would also ask the younger employees, "'How old are you now,' and [be] very, very involved in their life, and a lot of it very age-related." (*Id.*, Landon Dep. 37.) Landon stated that Morris's comments about the younger employees "sometimes . . . was just something to talk about and be funny. She loved to just crack

everyone up. So she would maybe talk about . . . what us older people were doing when they were babies. 'Oh, you were a baby, and we were already doing this job,' or that kind of conversation." (*Id.*) Landon also testified that on at least two occasions, another employee named Rob Woods called her a "broodmare" because she had five children. (*Id.* at 5, Landon Dep. 28.)

McKee testified at her deposition that at one point in December of 2009, Linda Sheley, Landon's assistant, and unknown other persons may have said something about how ASC wanted younger employees, but McKee could not recall specifics. (DE # 27-5 at 13, McKee Dep. 54-57.) McKee also testified that Susan Halley, a contractor who worked for ASC, once stated that "everyone in corporate is young and beautiful." (*Id.* at 17, McKee Dep. 58.)

*Investigation and Termination*

Landon's trouble at work initially stemmed from her relationship with a resident named Mr. W. Landon stated that she first met Mr. W through McKee before Mr. W was a resident at Bethlehem Woods. Thereafter, she saw Mr. W "frequently" (initially every few months, and, over time, weekly or more) at her home for cookouts and holidays, and went out to breakfast with him, and presumably McKee. (DE # 22-1 at 43, Landon Dep. 70-71.) She often had dinner with him, and they took turns paying. (*Id.* at 47, Landon Dep. 74.) Landon was aware of the fact that, at one point, Mr. W went to the bank with McKee and made a payment on McKee's car loan. (*Id.* at 48, Landon Dep. 75.) The amount of the payment was around $9,400. (DE # 22-6 at 7, McKee Dep. 34:21.)

3

Several years later, Mr. W moved into Bethlehem Woods. (DE # 22-1 at 51, Landon Dep. 78.)

Defendants claim that in October of 2011, Karner received a report from another employee that Mr. W had given gifts to Landon and McKee. (DE # 22-5 at 2.) Karner investigated, and interviewed both women. (*Id.*) Landon told Karner about her history of interactions with Mr. W (*id.* at 2, 6), but McKee did not answer his questions regarding the car payment, and told Karner that the details were none of his business. (*Id.* at 3; DE # 22-6 at 38, McKee Dep. 11.) McKee later stated that neither Mr. W nor his wife were residents of hers when the gift was received. (DE #27-4 at 2.) At some point Karner also learned that Landon had followed Mr. W back to his nursing home residence after he had been out drinking, which Karner felt was a "poor reflection of the company" for someone like Landon who was in a "leadership role." (DE # 27-9 at 2; DE # 22-5 at 3.)

Karner conferred with his human resources department, and decided to terminate Landon and McKee. (DE # 27-9 at 2.) Landon's official termination form stated that her termination was due to violation of Rule #26 of the employee handbook, which permits termination for "[a]ny action that management believes threatens the health or well being of others." (DE # 22-4 at 4; DE # 22-7 at 2.) The parties do not dispute that Landon was replaced by the assistant director of nursing, Linda Sheley, who was younger than Landon. (DE # 23 at 6, DE # 26 at 1.)

On March 6, 2012, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination. (DE # 1 at 3.) The EEOC issued a right to sue letter on August 30, 2012, because it was unable to conclude that a violation of law occurred. (*Id.* at 4.) Plaintiff filed the present lawsuit on November 9, 2012, against ASC and Bethlehem Woods. (DE # 1.) She later amended her complaint to sue Eaglecare, LLC. (DE ## 13, 16.) She dropped her case against Bethlehem Woods at the same time. (DE # 13.)

Defendants ASC and Eaglecare moved for summary judgment on plaintiff's complaint. (DE # 22.) Plaintiff responded (DE # 26), defendants replied (DE # 30), and the motion is ripe for ruling.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material

5

fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

## III. DISCUSSION

Plaintiff alleges discrimination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.* An age-discrimination plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009). At the summary judgment stage, an age discrimination claim can be supported in one of two ways: either by proffering direct or circumstantial evidence that discriminatory animus motivated the employment decision (known as the direct method), or by relying on the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Fuka v. Thomson Consumer*

*Electronics,* 82 F.3d 1397, 1402 (7th Cir. 1996). Plaintiff appears to rely only on the indirect *McDonnell Douglas* method, so the court confines its analysis accordingly.

The *McDonnell Douglas* method has three steps. The first step requires a plaintiff to establish a prima facie case of discrimination; the second requires the employer to articulate a legitimate non-discriminatory rationale for its action; and the third requires an analysis of whether the employer's stated reason is pretexual. *McDonnell Douglas,* 411 U.S. 792. In the first step, the prima facie is established when the plaintiff shows: (1) that she was a member of the protected age group; (2) that she was satisfying the employer's legitimate expectations; (3) that she was discharged or demoted; and (4) that the employer sought a younger replacement. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).

In this case, the parties dispute only the second element of the prima facie case, which queries whether plaintiff was satisfying defendants' legitimate expectations. Defendants argue that plaintiff was fired for good reasons, but plaintiff claims that those reasons are a sham which were made up simply so defendants would have an excuse to rid themselves of an older employee. In these situations, "the second prong [of the prima facie case] and the pretext question seemingly merge because the issue is the same — whether the employer is lying." *Hague v. Thompson Distr. Co.,* 436 F.3d 816, 823 (7th Cir. 2006); *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1178 (7th Cir. 1997) ("The defendant's expectations are not legitimate if they are phony; so if they are argued to be phony, the issue of legitimate expectations and the issue of pretext seem to merge.").

Accordingly, the court will "focus on the question of pretext, while keeping in mind that if [plaintiff] did not present sufficient evidence of pretext, [she] also did not show that [she was] meeting [her] employer's expectations." *Id.*

Plaintiff can demonstrate that defendants' explanation is pretextual directly by showing that "a discriminatory reason more likely motivated" defendants' employment action, or indirectly by showing that defendants' explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In this case, plaintiff cannot demonstrate pretext directly, because she has no evidence that age played a role in the employment action. Plaintiff's only evidence of age-related animus consists of the comments of Morris, Woods, Sheley, and Halley. However, plaintiff has not pointed to any evidence demonstrating that any of these individuals were decision-makers with regard to plaintiff's termination, knew of the actual decision-maker's motives, or manipulated actual decision-makers into terminating plaintiff. Accordingly, their comments do not create an issue of fact regarding whether defendants' stated reasons for firing plaintiff were pretextual. *Chiaramonte v. Fashion Bed Grp., Inc.,* 129 F.3d 391, 402 (7th Cir. 1997); *see also Cook v. IPC Int'l Corp.,* 673 F.3d 625, 628 (7th Cir. 2012) (explaining the "cat's paw" theory of liability).

Though plaintiff has pointed to no evidence that Morris (plaintiff's immediate supervisor) was involved in the decision to terminate plaintiff, the court indulges

plaintiff by assuming, for purposes of this opinion, that she did. Even if that were true, Morris's alleged comments do not demonstrate age-based animus against older individuals. In her deposition, plaintiff testified at length regarding Morris's "volatile personality" and inappropriate interest in employees' personal lives. (DE #27-1 at 6-7, Landon Dep. 34-35.) Morris's questions and comments to employees covered the subjects of their marriages, birth years, haircuts, clothing, and diets. (*Id.* at 7-9, Landon Dep. 35-37.) According to Landon, Morris was also very interested in knowing employees' ages and asked if employees knew certain individuals. (*Id.* at 10, Landon Dep. 38.) Morris also made numerous comments about or to the younger employees, including statements such as: "Well, now, the young ones in here might not understand," and "Oh, you were a baby, and we were already doing this job." (*Id.* at 9, Landon Dep. 37.) Landon testified that Morris would make fun of the younger employees, which seemed like "just something to talk about and be funny. She loved to just crack everyone up." (*Id.*)

Plaintiff argues that Morris's behavior demonstrated a bias against older individuals, but no reasonable juror would come to this conclusion given the comments plaintiff testified that Morris made. In fact, the only reasonable inference to be drawn from Morris's alleged comments is that Morris was biased *against younger individuals*, as she frequently made fun of them and teased them for their relative lack of experience. However, bias against younger employees does not violate the ADEA. *Karlen v. City Colleges of Chicago,* 837 F.2d 314, 318 (7th Cir. 1988) ("[T]he Age Discrimination in

9

Employment Act does not protect the young as well as the old . . . The protected zone begins at age 40."). Morris's other comments and inquiries might suggest that she was intensely curious about the minutiae of other people's lives but, of course, intense curiosity does not violate the ADEA either. Accordingly, plaintiff cannot establish pretext directly by pointing to Morris's (or any other employees') comments.

An indirect approach fares no better, though, because plaintiff cannot show that defendants' explanations for their decision to terminate plaintiff are unworthy of credence. Plaintiff merely attempts to argue that defendants' perception of plaintiff's behavior was not a correct perception. This attempt is insufficient. The Seventh Circuit has articulated "countless times" that "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the *true ground* of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground. If it is the true ground and not a pretext, the case is over." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) (emphasis added); *see also Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (the pretext inquiry must focus on whether the employer's stated reason is honest, not whether it is well-reasoned, wise or accurate). As the Seventh Circuit aptly stated in *Millbrook v. IBP, Inc.*:

> [A] court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments. As we have stated, no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [anti-discrimination law] does not interfere.

280 F.3d 1169, 1181 (7th Cir. 2002) (internal quotation marks, alterations, and citations omitted); *see also Blise v. Antaramian,* 409 F.3d 861, 867-68 (7th Cir. 2005) ("Blise may be right—she may be more qualified than Davis, and Davis may not be qualified at all—but so long as Kenosha genuinely believed differently (and Blise offers us no evidence that its agents did not), it is entitled to act on that belief.").

Thus, even if defendants were entirely wrong about the factual basis for their decision to fire plaintiff, it does not follow that defendants' stated rationales for firing plaintiff — that she exercised poor judgment in a leadership role which threatened the health of others, and inappropriately accepted gifts from a resident — were *lies*. A memorandum authored by Kerner summarizing the events leading up to and including plaintiff's termination includes both reasons as informing to his decision to terminate plaintiff's employment. (DE # 27-9.) Plaintiff has provided nothing more than her own suspicions that those reasons were not genuinely believed by Kerner, and her own suspicions are not good enough. *Uhl v. Zalk Josephs Fabricators, Inc.,* 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim."). In sum, plaintiff cannot demonstrate an issue of fact regarding pretext, either directly or indirectly, and as such she cannot rely on the *McDonnell Douglas* method to save her claim from summary judgment.

IV. **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (DE # 22) is **GRANTED**. Because no claims remain against any parties in this case, the Clerk is

11

now ordered to **ENTER FINAL JUDGMENT** in this case, stating that judgment is entered in favor of defendants American Senior Communities, LLC, and Eaglecare, LLC; and against plaintiff Mary Landon, who shall take nothing by way of her complaint.

                                              **SO ORDERED.**

Date: July 30, 2015

                                      s/ James T. Moody  
                                      JUDGE JAMES T. MOODY  
                                      UNITED STATES DISTRICT COURT